**Rodney JAMES, and all others similarly situated,**
**Plaintiff,**

v.

**WASH DEPOT HOLDINGS, INC., Defendant.**

**No. 05–60822–CIV.**

United States District Court, S.D. Florida.

May 14, 2007.

Chris Kleppin, Glasser Boreth Ceasar & Kleppin, Plantation, FL, for Plaintiff.

Peter Wolfson Zinober, Shane T. Munoz, Jaimi Lamb Kerr, Zinober & McCrea, Tampa, FL, for Defendant.

### ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR ATTORNEYS FEES

DIMITROULEAS, District Judge.

THIS CAUSE comes before the Court upon Plaintiff, Rodney James and his Counsel's Verified Motion for Attorney's Fees [DE 141]. The Court has carefully considered the Motion [DE 141]. Defendant Wash Depot's Response [DE 166], Plaintiff and his Counsel's Reply [DE 175], Plaintiff's Notice of Additional Authority [DE 180], Defendants' Notices of Supplemental Authority [DEs 188 & 190], the parties affidavits and exhibits and is otherwise fully advised in the premises.

### I. BACKGROUND

In the underlying lawsuit, Plaintiff asserted claims of: (1) race discrimination under the Florida Civil Rights Act ("FCRA"); (2) retaliation under the FCRA, for alleged complaints of race discrimination; (3) retaliation under the Fair Labor Standards Act ("FLSA"), for alleged complaints about his pay; (4) retaliation under the Florida Whistleblower Act ("FWA"), for alleged complaints about discrimination, his pay, and the alleged hiring of illegal workers; (5) failure to pay minimum wage under the FLSA; and (6) failure to pay overtime under the FLSA. In his Rule 26 disclosures, Plaintiff calculated that he had suffered more than $600,000 in damages.

On November 21, 2006 this Court entered an Order granting Summary Judgment in favor of Defendant with respect to all of the Plaintiff's claims except the minimum wage and overtime claims under the FLSA [DE 102]. The two FLSA claims proceeded to trial. After a three-day jury trial the jury found in favor of Wash Depot with respect to the minimum wage claim and in favor of James on the overtime claim. The jury awarded James $1,746.81 in damages. After liquidating damages, Plaintiff's total judgment in the matter was $3,493.62.

As a prevailing plaintiff under the FLSA, Plaintiff and his counsel now seek $377,090.62 in attorneys fees for prevailing on the FLSA overtime claim. Plaintiff claims that all of the hours claimed in this motion were spent on the FLSA wage and hour claims rather than on the discrimination and retaliation claims, on which the Defendant prevailed. Defendant vigorously objects to the award of any fees in this matter and further argues that if fees are awarded that the amount should be significantly less than what the Plaintiff requests.

### II. DISCUSSION

In the United States, the "American Rule" provides that, absent a contrary direction from Congress, the prevailing party in a litigation is not ordinarily entitled to recover attorneys fees from his opponent. *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The FLSA, however, explicitly provides that the Court "shall, in addition to any judg-

ment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Thus, fee awards are mandatory for prevailing plaintiffs in FLSA cases. *See Kreager v. Solomon & Flanagan, P.A.,* 775 F.2d 1541, 1542 (11th Cir.1985); *Shelton v. Ervin,* 830 F.2d 182, 184 (11th Cir.1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases."). There is no real dispute that James is a prevailing plaintiff in this action with respect to his FLSA overtime claims, and as such, is entitled to an award of reasonable attorney's fees.[1] The Supreme Court has held that a party is a "prevailing party" for purposes of an attorney's fee award if the party "succeeded on any significant claim affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

■ In the Eleventh Circuit, *Norman v. Hous. Auth. of the City of Montgomery,* 836 F.2d 1292 (11th Cir.1988), and *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), provide the framework for awarding attorneys fees to prevailing plaintiffs. To begin its analysis, the Court must first determine the "lodestar," which is calculated by multiplying the number of hours reasonably expended in a litigation by a reasonable hourly rate. *See e.g. Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *Norman,* 836 F.2d at 1299. While the "lodestar" method effectively replaced the balancing test previously prescribed by *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19, the twelve (12) *Johnson* factors[2] "might still be considered in terms of their influence on the lodestar amount." *Norman,* 836 F.2d at 1299. The burden of establishing the number of hours reasonably expended, lies with the Plaintiff, and "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933; *see also Norman,* 836 F.2d at 1303. Similarly, the Plaintiff has the burden of establishing that the hourly rate requested is a reasonable one. *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994).

■ The determination of reasonableness lies in the sound discretion of the trial court, *Norman,* 836 F.2d at 1301. In determining whether the number of hours expended on the litigation was reasonable, the district court should exclude from its initial fee calculation "hours that are excessive, redundant, or otherwise unneces-

---

1. Defendant cites to *Goss v. Killian Oaks House of Learning,* 248 F.Supp.2d 1162 (S.D.Fla.2003), for the proposition that district courts have the discretion to deny fees in FLSA cases under certain circumstances. In *Goss,* the court held that "[t]here are 'special circumstances' that can render such an award of attorney's fees unjust, and so-called nuisance settlements represent such a circumstance." *Id.* at 1168. This case, however, is not a nuisance case that would require a denial of the requested attorneys fees.

2. The twelve *Johnson* factors are:
 1) the time and labor required;
 2) the novelty and difficulty of the questions;
 3) the skill requisite to perform the legal service properly;
 4) the preclusion of other employment by the attorney due to acceptance of the case;
 5) the customary fee;
 6) whether the fee is fixed or contingent;
 7) time limitations imposed by the client or the circumstances;
 8) the amount involved and the results obtained;
 9) the experience, reputation, and ability of the attorney;
 10) the "undesirability" of the case;
 11) the nature and length of the professional relationship with the client;
 12) awards in similar cases.
 *Johnson,* 488 F.2d at 717–19.

sary." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. Also, in making this calculation, the court should exclude "time spent on discrete and unsuccessful claims." *Norman*, 836 F.2d at 1302. "The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Fee applicants are required to exercise "billing judgment" and exclude these hours from their fee application. *ACLU of Ga. v. Barnes*, 168 F.3d 423 (11th Cir.1999), "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" *Id.*

 When determining a reasonable hourly rate, the rate should be "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* On the issue of a reasonable rate, the Court is itself considered an expert and can make an informed judgment as to a proper award of fees even without the benefit of outside testimony. *Id.* at 1303; *see also Loranger*, 10 F.3d at 781.

 "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933. The most important factor to consider is the result obtained. *Id.* at 436, 103 S.Ct. 1933. If the success was limited or the plaintiff's victory was limited, the lodestar must be reduced to reflect the limited result. *Norman*, 836 F.2d at 1302; *See also Popham v. City of Kennesaw*, 820 F.2d 1570, 1579–80 (11th Cir.1987). Fee awards, however, should not simply be proportionate to the results obtained by the Plaintiff. *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir.1997) (citing *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)). As this Court has noted before, " '[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case.' " *Tyler v. Westway Auto. Serv. Ctr., Inc.*, 133 Fed.Appx. 604, 2005 WL 1208573, *9 (S.D.Fla.2005) (quoting *Holyfield v. F.P. Quinn & Co.*, 1991 WL 65928, *1 (N.D.Ill. April 21, 1991) (court awarded approximately $7,000 in fees even though the judgment was only $921)); *see also Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir.1991) (quoting *Rivera*, 477 U.S. at 574, 106 S.Ct. 2686) (" 'Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.' "). It is against this background that the Plaintiff's attorneys fees request must be evaluated.

#### a. *Calculating the Lodestar*

##### 1. *The Number of Hours Expended*

 In this motion, Plaintiff's counsel requests $377,090.62 in attorneys fees. This amount is based on the Plaintiff's calculated lodestar of $301,672.50 with a

25% upward adjustment for "excellent results obtained." The Plaintiff has submitted an hourly log detailing time expended on the litigation by the three attorneys involved (Chris Kleppin (416.1). Lloyd S. Glasser (260.0) and Harry O. Boreth (46.6)) [DE 141–2 Ex. 5]. Defendant objects to specific time entries as redundant, or expended on ultimately unsuccessful claims. In his Reply, Plaintiff's counsel does not directly address or dispute any of the specific objections made by the Defendant in its Response. Nonetheless, the Court will address each of Defendant's specific challenges.

1) Defendant objects to 5.1 hours spent by Boreth representing Plaintiff at his unemployment hearing. Defendant claims, and the Court agrees, that this hearing was not related to the FLSA claims, but rather pertained only to the Plaintiff's discrimination and retaliation claims and therefore must be disallowed.

2) Defendant objects to 1.6 hours of work by Kleppin in connection with removal of the state law discrimination and retaliation claims and consolidation of the two cases in this matter.[3] The Court agrees with the Defendant that this was not related to the prosecution of the Plaintiff's FLSA claims and the hours spent removing and consolidating the case must be disallowed.

3) Defendant objects to 8.9 hours billed by Kleppin in connection with a motion to compel unemployment records. These records addressed Plaintiff's termination and were thus irrelevant to the FLSA claims. Accordingly, these hours must be disallowed.

4) Defendant objects to 4.5 hours of work by Kleppin opposing Wash Depot XV's Motion for Entry of Judgment. The Court agrees with Defendant that because Wash Depot XV was a defendant only in Plaintiff's state law discrimination and retaliation claims, Plaintiff cannot now recover fees for work on this motion.

5) Defendant objects to 4 hours spent by Kleppin in connection with Plaintiff's Motion for Judgment as a Matter of Law and Motion for a New Trial on his minimum wage claim. Defendant argues that these hours by definition only pertain to an ultimately unsuccessful claim. This claim by Defendant is a close call because the overtime claim and minimum wage claim were closely related. The Eleventh Circuit has held that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *U.S. v. Jones*, 125 F.3d 1418, 1429 (11th Cir.1997). However, because in this instance the claims *are* easily distinguishable. Defendant had already prevailed on the minimum wage claim and therefore hours expended on these post-trial motions necessarily addressed only an already unsuccessful claim. Accordingly, although time spent pursuing the minimum wage claim *before* trial should be compensable, the Court agrees with the Defendant that these post-judgment hours spent on the unsuccessful minimum wage claim must be excluded.

6) Finally, Defendant challenges hours logged when two or more attorneys appeared at various events. "Redundant hours generally occur when

---

**3.** Plaintiff initially filed two separate suits in this matter. The initial complaint filed on May 19, 2005, in federal court, stated only claims under the FLSA [DE 1]. Plaintiff filed a separate action in Florida Mate court under Florida state law stating his allegations of discrimination and retaliation under the FCRA. On March 20, 2006 Defendants removed the second action to federal court and moved to consolidate the two cases. On May 9, 2006 the Court granted the parties stipulated motion to consolidate the cases [DE 39].

more than one attorney represents a client." *Norman,* 836 F.2d at 1301–02. However, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.* Where more than one attorney is involved, the applicant must demonstrate that the time requested reflects the distinct contribution of each attorney, and the customary practice of multiple lawyer litigation. *ACLU of Ga.,* 168 F.3d at 432. Defendant objects to Boreth's presence at trial because he merely sat at the counsel table and did not even examine a single witness. Defendant cites to *Martin v. Cavalier,* in support of its position that these hours should be excluded, 48 F.3d 1343, 1360 (4th Cir.1995) (upholding the district courts finding that an attorney's request for $11,000 for time spent attending trial "when that attorney examined no witnesses at trial and had 'no active participation' in the trial."). The Court agrees with Defendant. In this case, where little more than attorney's fees was on the line at trial, it was unreasonable for the Plaintiff to bring two counsel to trial when one counsel would be trying the case. The fact that only one attorney would be trying the case was evident to the Court when Boreth appeared for Kleppin at calendar call without enough knowledge of the case to argue on the Motions in Limine. Accordingly, the Court finds that Boreth's presence at trial was unnecessarily duplicative and the twenty-seven (27) hours claimed for his attendance must be disallowed. For similar reasons the Court will deduct the six (6) hours billed by Boreth for his presence

defending the Plaintiff's deposition when both he and Glasser were present, but only Glasser participated.[4] The Court will not, however deduct time billed for two attorneys attending the mediation conference.

Accordingly the number of hours not deducted at this point in the Court's calculations of the lodestar are as follows:

1) Mr. Kleppin - 397.1 Hours

2) Mr. Boreth - 8.5 Hours

3) Mr. Glasser - 260 Hours

Defendant also makes more generalized objections to Plaintiff's counsel's lack of specificity in billing, billing for time spent working on multiple claims, and time spent by attorneys doing clerical work. Plaintiff's counsel vigorously defends itself against these objections. Because these generalized objections cannot easily be itemized and deducted by pointing to specific time entries, the Court will address these claims later in this opinion and merge this evaluation with its determination as to what adjustments to the lodestar are necessary and reasonable under the facts and circumstances of this case.

### 2. The Hourly Rate

■ Plaintiff's counsel asks for the following rates: $475 per hour for Boreth and Glasser and $375 per hour for Kleppin. In support of these rates. Plaintiff's counsel submits the affidavit of attorney Peter T. Mavrick[5] who states that these rates are commensurate with counsels' experience and what is awarded to attorneys of similar experience in labor and employment law cases in south Florida [DE 141–2 Ex. 1]. He states that the rates he has "witnessed awarded for employment law-

---

4. Boreth only spoke on the issue of transcripts after the deposition had concluded.

5. Maverick is in his fourteenth year of practice as an attorney. He was admitted to practice in California in 1992 and in Florida in

1996. He is rated AV by Martindale–Hubbell and graduated from Harvard law *cum laude* in 1992. His present hourly rate is $350 per hour. He has practiced extensively in labor and employment law.

yers in the Southern District of Florida is $450.00/hr for lawyers with the same experience as mine,[6] $400.00/hr for lawyers with approximately a little more than 5 years experience, and $300.00/hr with lawyers of approximately five years experience." However, Defendant files an opposing affidavit by attorney Michael W. Casey,[7] which suggests otherwise [DE 137–7 Ex. G]. Casey states that the appropriate hourly rates for attorneys in the south florida legal market are as follows:

| | |
|---|---|
| Paralegal: | $ 85–$110 |
| Associate: (1–4 years experience) | $150–200 |
| Associate: (4–8 years experience) | $200–$270 |
| Lawyer/Partner: (15–25 years experience) | $300–$375 |
| Lawyer/Partner: (25 years or more experience) | $350–$500 |

In addition to the numbers provided by the opposing experts in this case, the Court has exercised its own independent judgment concerning what rates are appropriate. A court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303.

Glasser states in his affidavit that he has been practicing law in the state of Florida since 1975 and has concentrated in employment law for over ten (10) years [DE 141–2 Ex. 2]. Boreth states in his affidavit that he has been practicing law since 1966, has been admitted to the Florida Bar since 1975 and has concentrated in the area of labor and employment law for over twenty-five (25) years [DE 141–2 Ex. 3]. The rates requested for Glasser and Boreth fall squarely within the ranges provided by both the Plaintiff's and the Defendant's fee experts, and the Defendant did not object. For these reasons and because the Court finds that the rates requested are reasonable, it will use the rate of $450.00 per hour in its calculation of the lodestar for Boreth and Glasser.

Defendant, however, vigorously objects to the rate requested by Kleppin. The Court agrees that the rate sought by Kleppin is high and, based on the reasoning below will grant him the hourly rate of $270.00 per hour. Despite being a named partner in his firm, Kleppin states in his affidavit that he has been a lawyer for under six (6) years and has specialized in labor and employment issues for only four (4) [DE 141–2 Ex.4]. Even at this early period in his legal career, however, Kleppin has tried several cases to verdict and claims that he is entitled to a higher rate because of the superior skill he has shown in litigating this case. As the Plaintiff points out, "the word 'skill' incorporates the notions of organization and efficiency.'" *Norman*, 836 F.2d at 1300. The Court cannot say that this case was litigated with particular skill or efficiency. In fact, Kleppin's claim in this case of his experience and expertise is in stark contrast to the position he took in front of Judge Seitz just months ago when, in filing his objections to a Report and Recommendation, recommending sanctions against him, Kleppin took the position that he was a "relatively inexperienced attorney" and that "his missteps in working toward that

---

**6.** Although, as indicated above, Maverick's current hourly rate is only $350 per hour.

**7.** Casey practices with the law firm of Epstein, Becker & Green, P.C. and has been a member of the Florida bar since 1972. During his entire tenure as an attorney. Casey has concentrated on civil rights and labor and employment law. He has been awarded an "AV" rating by Martindale Hubble and is a former chair of the Labor & Employment Law Section of the Florida Bar.

goal were the product of inexperience and naivete, not bad faith toward the litigants, opposing counsel, or the Court." *Bernal v. All Am. Inv. Realty, Inc.,* Case No. 05–60956 SEITZ/MCALILEY, 2006 WL 3667746 at 2 (S.D.Fla. Oct. 30, 2006) [DE 120]. Since beginning to practice employment law in the Southern District of Florida, Mr. Kleppin has been sanctioned by at least two different District Court Judges. *See Bernal v. All American Investment Realty,* 479 F.Supp.2d 1291, 1296 (S.D.Fla. 2007) ("Based on the totality of the circumstances, [the Magistrate Judge] concluded that no reasonable attorney in Kleppin's situation would have behaved the way he did, and that in fact. Kleppin had grossly deviated from reasonable conduct."); *Bernstein v. Boies, Schiller & Flexner, L.L.P.,* Case No. 05–61126–CIV–MOORE/GARBER at 1 (S.D.Fla. May 23, 2006) ("The Order entered on February 2, 2006 found *inter alia* that plaintiff's counsel Chris 'Kleppin's unreasonable and vexatious conduct has clearly multiplied the proceedings in this case and warrants sanctions pursuant to 28 U.S.C. § 1927.' "). While Kleppin's behavior in this case by no means reached the level of conduct that Judge Seitz or Judge Moore experienced in their courtrooms, this Court certainly cannot say that Kleppin conducted discovery, pretrial preparation or trial in the most efficient and expeditious manner possible. Accordingly the Court will grant Kleppin fees at the rate of $270 an hour, which is the top of the range suggested by the Defendant's expert for an Associate who has been practicing for between 5–8 years. The Court thinks this rate is more than generous. Accordingly the lodestar in this case is equal to $228,042 (8.5x$450 + 260x$450 + 397.1x$270 = $228,042).

b. *Adjustments for the Results Obtained*

■ Having calculated the lodestar, the Court must now determine whether this number should be adjusted up or down for the results obtained. Plaintiff asks for a 25% upwards adjustment for the results obtained, because the fee arrangement between Plaintiff and James was contingent, and because of the delay in payment. The Court finds this request to be ludicrous. As the Defendant points out, Plaintiff initially requested upwards of $600,000 in damages in this case. Ultimately the Plaintiff succeeded in obtaining approximately $3,500 in damages, including liquidated damages. Under no circumstances can this be titled an excellent, let alone an exceptional result. There is, of course, a difference between excellent and exceptional results, and the Supreme Court has specifically and instructed that only the latter justifies an increased award of attorney's fees. *See Jones v. Central Soya Co., Inc.,* 748 F.2d 586, 591 (1984) (holding that an upward adjustment might be warranted in a situation where the Plaintiff's case succeeds in breaking new ground or making new law furthering important congressional policies). In this case an upward adjustment is certainly not warranted in light of the small degree of the Plaintiff's success.

With respect to the delay in payment, because the Court has utilized current rates rather than historic ones, there is no need for any upward adjustment. *See Norman,* 836 F.2d at 1302 ("In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than historic rates."). Likewise, it is no longer permissible to enhance for a contingency fee arrangement. *See McKenzie v. Cooper, Levins & Pastko, Inc.,* 990 F.2d 1183, 1186 (11th Cir.1993). Accordingly, the Court cannot agree with Plaintiff that an upward adjustment is warranted.

■ However, the Court does agree with Defendant that a downward adjustment is appropriate in this case. At this point the Court merges the discussion of

hourly deductions and the reduction of the overall fee award for the results obtained. The Supreme Court has recognized the difficulty in reducing the lodestar to an amount that is reasonable in relation to the amount obtained and has counseled that the reduction may be accomplished by either "identify[ing] specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933. Accordingly, we first address the more generalized objections of the Defendant to hours billed by Plaintiff's counsel and move on to a discussion of a reduction for the results obtained.

Defendant first objects that work Plaintiff's counsel performed on multiple claims was not properly allocated to the prosecution of the FLSA claims. The Court agrees. While the Court acknowledges that part of the time working on the various Motions for Summary Judgment, pretrial motions and attending and preparing for depositions was legitimately spent prosecuting the FLSA claims, the Court cannot agree that the Plaintiff should be permitted to bill Defendant for all of the hours spent on these tasks, when in many instances the majority of the time devoted to the task was spent on ultimately unsuccessful claims. For example, in responding to Defendant's Motion for Summary Judgment only approximately two (2) of the twenty (20) pages are directed at the Plaintiff's FLSA claims. Likewise, much of the deposition questions in this case surrounded issues unrelated to the Plaintiff's FLSA claims. While this may be due to the lack of accuracy in the Plaintiff's billing records, rather than a conscious effort to overstate the fees recoverable as a pre-

vailing plaintiff under the FLSA, the burden is on the fee applicant to maintain billing records "in a manner that will enable a reviewing court to identify distinct claims." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433, 103 S.Ct. 1933. Because nearly all of the work Plaintiff's counsel performed on the case during the pretrial period was directed towards multiple claims, and the Plaintiff kept insufficient records to allow the Court to properly segregate the claims, the Court finds that a reduction of the lodestar is necessary to deduct for work performed on unsuccessful claims.

Next, Defendant argues that Plaintiff's counsel improperly seeks reimbursement at attorney rates for work that was clerical in nature. As the Eleventh Circuit held in *Johnson,*[8] "[i]t is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." 488 F.2d at 717. In this case, the time entries reflect that attorneys with more than 30 years of experience charged time for tasks that could have been performed by a paralegal or at the very least, a less senior attorney. Tasks such as performing internet searches, calendaring dates, and proofreading are not tasks that would reasonably be billed to a client at $450 or even $270 an hour in private practice. Because, once again, these time entries are lumped

---

**8.** The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. *Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

together with other, more legal, tasks, the Court finds it difficult to separate the claims and deduct the appropriate number of hours. Accordingly, the Court finds this is yet another factor contributing to its decision that a reduction in the overall amount of fees charged to the Defendant by the Plaintiff is warranted.

Finally, Defendant argues that a reduction is warranted in light of the limited recovery Plaintiff achieved in this case. As mentioned above, the Supreme Court has determined that "the extent of a plaintiff's success is a crucial factor that the district courts should consider carefully in determining the amount of fees to be awarded." *Hensley* 461 U.S. at 438 n. 14, 103 S.Ct. 1933. In this case, in light of the fact that the Plaintiff initially sought to recover over $600,000 and ultimately prevailed on a jury verdict of $1,746.81, plus a liquidated damages award, for a total award of $3,493.62, the Court finds that this case merits a reduction for limited recovery.

While the Court does not place as much weight on the limited monetary success of the Plaintiff as does the Defendant, it is nonetheless relevant to the Court's inquiry and the Eleventh Circuit has upheld reductions under similar circumstances. In *Popham,* for example, the Plaintiff prevailed on his excessive force claim but not his other claims. The *Popham* Jury awarded $30,000 in damages, where Plaintiff requested $2,000,000. Court awarded attorney's fees in the amount of $16,965.15 which represented a 67% reduction. Similarly, in *Andrews* the Eleventh Circuit emphasized how important it was for a district court to consider the extent of the plaintiff's success. In *Andrews* the plaintiffs initially sought $3.5 million and ultimately prevailed in a jury verdict recovering only $49,549. The Eleventh Circuit held that " '[w]here the plaintiff has achieved only limited success, the district

court should award only that amount of fees that is reasonable in relation to the results obtained.' We agree that the district court abused its discretion by not giving greater weight to plaintiffs' limited success." *Andrews,* 122 F.3d at 1375. The court remanded to the district court for reconsideration with this factor in mind, despite the fact that the initial award of attorneys fees rejected by the Eleventh Circuit had already been reduced by 78%. In this case, because the Plaintiff recovered only .5% of the amount initially sought, the Court finds it appropriate to reduce the amount of the lodestar to reflect this limited success.

Taking together the Plaintiff's counsel's failure to adequately segregate time spent on successful and unsuccessful claims, Plaintiff's billing for clerical work at senior attorney and partner rates, and the limited success achieved by the Plaintiff, the Court finds that the lodestar should be reduced by 50% in this case. In coming to this conclusion, the Court has carefully followed the Eleventh Circuits admonition that the amount of attorneys fee recovered should not be a strict proportion of the amount of damages the plaintiff recovered. *Andrews,* 122 F.3d at 1376. Accordingly, the amount of attorneys fees the Court finds to be reasonable and appropriate under the circumstances is $114,021. ($228,-042/2)

While in light of the above discussion, this amount might still seem excessive, the Court keeps in mind that the fee shifting provisions of the FLSA were designed so that Plaintiffs could still recover under the statute despite the small monetary nature of their claims. The Court also agrees with the Plaintiff that the Defendant in this case is certainly not blameless for the high price tag on the attorneys fees award. As the Plaintiff points out, the Defendant has vigorously defended this case. Such a vigorous defense necessarily requires the

Plaintiffs counsel to expend more hours and drives up the ultimate charge of attorneys fees billed to a non-prevailing defendant. *See e.g. Rice v. Sunrise Express, Inc.*, 237 F.Supp.2d 962, 977 (S.D.Ind. 2002). The Court finds that the above amount represents a fair, equitable and reasonable amount of attorneys fees in light of the purposes behind the FLSA and other similar fee shifting statutes, as well as the Plaintiff's limited success in light of the plethora of hours expended litigating this case.

### III. *CONCLUSION*

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Verified Motion for Attorney's Fees [DE 141] is hereby **GRANTED**;

2. Counsel for the Plaintiff, Glasser, Boreth Ceasar & Kleppin are hereby awarded attorneys fees in the amount of $114,021.