[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10673
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-00753-MHC

P&K RESTAURANT ENTERPRISE, LLC,
d.b.a. Lacura Bar & Bistro,
ALONZO A. ROSS,
LAMARCUS K. ALLISON,

Defendants-Counter Claimants-
Appellants,

versus

SHATRAILIA JACKSON,
Individually and on behalf of all others similarly situated
who consent to their inclusion in a collective action,

Plaintiff - Counter Defendant -
Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 15, 2019)

Before JILL PRYOR, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Shatrailia Jackson worked as a server at Lacura Bar & Bistro,[1] a cash-only nightclub in Atlanta, from April 2014 to February 2015.  A jury awarded her $6,308 for unpaid minimum wages under the Fair Labor Standards Act, and the district court awarded an additional $6,308 in liquidated damages, $2,764.64 in costs, and $116,129.56 in attorneys' fees.  Lacura now contends that the jury's verdict was unsupported by the evidence, that liquidated damages were inappropriate, and that the attorneys' fees were excessive.  We affirm.

I.

Jackson began working as a server at Lacura in April 2014 and held that position until February 2015.  Her schedule varied over time, ranging from two to three days per week during the first month to three to four days per week thereafter.  Shifts generally lasted 7.5 hours each, stretching roughly from 8:30pm to 4:00am.  Lacura did not record the tips its servers made, did not issue paychecks or paystubs, did not issue tax documents to employees, and did not use a time clock.  It operated as a cash-only business and lacked traditional employment records.

---

[1] The jury found that Jackson was an employee of P&K Restaurant Enterprise (Lacura's parent corporation), Alonzo Ross, and Lamarcus Allison.  Neither party challenges these determinations on appeal and this opinion refers to the employers collectively as "Lacura."

Jackson testified that when she was hired her boss told her that she "would be getting paid $25 per shift" and she could keep her tips. She estimated that she earned around $100 each night in tips. But—according to Jackson—no one ever discussed the tip credit reduction to the minimum wage with her, her boss did not use the phrase "tip credit" at all, and she was never told that her tips were going to be counted as wages.[2] Nor did Lacura post any notices about the FLSA, the minimum wage, or the tip credit reduction.

Jackson further testified at trial that Lacura did not consistently pay her the promised $25 per shift. Instead, Jackson claimed that she was not paid anything "about half the time" and that she received $25 "a few times" and $20 "a couple times." This testimony was in tension with the testimony of other Lacura employees, who said that everyone was paid each night.

Jackson filed a complaint on March 13, 2015, asserting three counts: failure to pay Jackson the minimum wage under the FLSA; failure to pay individuals similarly situated to Jackson the minimum wage under the FLSA (a collective action claim); and retaliation. Jackson voluntarily dismissed her retaliation claim shortly before trial, and it is unclear what became of the collective action claim (neither

---

[2] The testimony on this point was unclear. On cross-examination, Jackson admitted that she "knew that the tips" she received "were going to be part of compensation." As Lacura notes, that statement could be interpreted as an admission that Lacura informed her that tips would be counted toward her minimum wage. Viewing the evidence in the light most favorable to the verdict, however, the jury also could have interpreted this statement merely to reflect the fact that Jackson knew that she would receive tips.

3

party raises any argument here regarding that claim).  After a jury trial, the district court accepted the jury's verdict of $6,308 in damages and denied Lacura's motion for judgment as a matter of law.  The district court then added an additional $6,308 in liquidated damages and awarded attorneys' fees and costs of $118,894.20.  Lacura now appeals, arguing that the jury verdict was unsupported by the evidence, that liquidated damages were improper, and that the amount of attorneys' fees was disproportionate to the result in this case.

## II.

We review a district court's denial of a motion for judgment as a matter of law *de novo*.  *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1306 (11th Cir. 2013).  Judgment as a matter of law is appropriate only if "a reasonable jury would not have a legally sufficient evidentiary basis" to find in favor of the nonmoving party.  Fed. R. Civ. P. 50(a)(1).  We will affirm the district court's denial unless "the facts and inferences point overwhelmingly in favor" of Lacura, "such that reasonable people could not arrive at a contrary verdict."  *Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 892 (11th Cir. 2011) (quoting *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1275 (11th Cir. 2008)).

Liquidated damages are generally mandatory once a minimum wage violation is established, but a court may decline to award such damages if it is satisfied that the employer acted in good faith and upon reasonable grounds to believe its practices

4

were lawful. *See Spires v. Ben Hill Cty.*, 980 F.2d 683, 689 (11th Cir. 1993). The questions of good faith and reasonable grounds are mixed questions of fact and law with both subjective and objective components, and we review those questions "de novo to the extent they involve application of legal principles to established facts, and for clear error to the extent they involve an inquiry that is essentially factual." *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991) (quoting *Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990)). "Once the employer has demonstrated its good faith and reasonable belief, the district court's refusal to award liquidated damages is reviewed for abuse of discretion." *Id.*

Prevailing FLSA plaintiffs are "automatically entitled to attorneys' fees and costs." *Dale v. Comcast Corp.*, 498 F.3d 1216, 1223 n.12 (11th Cir. 2007) (citing 29 U.S.C. § 216(b)). Once a plaintiff has prevailed, the "determination of a reasonable fee pursuant to section 216(b) of the Fair Labor Standards Act is left to the sound discretion of the trial judge and will not be set aside absent a clear abuse of discretion." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985).

## III.

Lacura challenges the jury's verdict, the liquidated damages award, and the amount of attorneys' fees the district court granted. We address each of these challenges in turn.

*A. Jury Verdict*

The jury found that Lacura failed to pay Jackson the minimum wage and awarded $6,308 in damages.  Lacura contends that the "evidence established that as a matter of law, the jury could not find" that Lacura failed to pay Jackson as a tipped employee under the FLSA.  This argument fails because Jackson testified that she was never notified that tips would be counted as wages (as required by the FLSA) and that she was not always paid, and the jury was entitled to believe that testimony.

The federal minimum wage is $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(C).[3] For tipped employees, however, an employer may credit the employee's tips toward the minimum wage.  *See id.* § 203(m).  An employer may not take a tip credit unless, among other requirements, the employee "has been informed by the employer of the provisions" of the FLSA pertaining to the tip credit.  *Id.* § 203(m)(2)(A); *see also Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1355 (M.D. Fla. 2016) ("If an employer fails to satisfy any of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result.").  And even if the employer qualifies to take a tip credit, it may still credit

---

[3] At trial, Lacura argued that it was not subject to the FLSA's minimum wage provisions because its annual gross sales were less than $500,000.  *See* 29 U.S.C. § 203(s)(1)(A)(ii) (defining "enterprise engaged in commerce or in the production of goods for commerce" to require the enterprise to have "annual gross volume of sales made or business done . . . not less than $500,000").  Because of Lacura's shoddy recordkeeping, Jackson used various liquor receipts, labor costs, and the like to argue that Lacura's sales exceeded $500,000.  The jury found in favor of Jackson on this point and Lacura has not appealed that aspect of the verdict.

only $5.12 per hour toward the employee's wage—in other words, the employer

must pay a tipped employee at least $2.13 per hour, regardless of how much money

the employee earns in tips.  *See* 29 U.S.C. § 203(m); 29 C.F.R. § 516.28(a)(3).

> The FLSA requires covered employers to maintain certain employee records:
>
> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516.2 (listing records and information

employers must keep).  For tipped employees, regulations require even more

detailed records, including weekly or monthly amounts of tips received, as well as

the amount "by which the wages of each tipped employee have been deemed to be

increased by tips as determined by the employer."  29 C.F.R. § 516.28.  The Supreme

Court has held that "where the employer's records are inaccurate or inadequate," an

employee "has carried out his burden if he proves that he has in fact performed work

for which he was improperly compensated and if he produces sufficient evidence to

show the amount and extent of that work as a matter of just and reasonable

inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187,

1192 (1946)[4]; *see also Lamonica*, 711 F.3d at 1315 (where employer fails to keep time records, employee's burden is "relaxed"). The burden then shifts to the employer to prove "the precise amount of work performed" or to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687–88, 66 S. Ct. at 1192.

Here, the jury had sufficient evidence to conclude that Lacura failed to pay Jackson the minimum wage. Although Jackson testified that she made about $100 in tips each night, the jury could have credited her testimony that no one ever discussed the tip credit provisions of the FLSA with her—and thus could have concluded that Lacura was not entitled to take a tip credit at all. Lacura argues that Jackson "was at the meeting where she was told the employees would receive their tips as part of the minimum wage credit," but that mischaracterizes the record; in the portion of the record Lacura cites, Jackson states that she attended "[o]nly one" mandatory employee meeting and that the topics of discussion were "our performances of 2014 and the revenue of 2014." Jackson, on the other hand, testified that although she was aware that she would keep her tips, no one ever discussed the tip credit provisions with her. *See Kubiak*, 164 F. Supp. 3d at 1354 n.16 ("To provide

---

[4] Congress rejected by statute another part of the *Mt. Clemens* decision, *see Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. __, __, 135 S. Ct. 513, 519 (2014), but the quoted portion of *Mt. Clemens* remains good law, *see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. __, __, 136 S. Ct. 1036, 1047 (2016) (approving the quoted portion of *Mt. Clemens* and allowing "a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records").

sufficient notice, the employer must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations." (internal quotation marks omitted)).  The jury thus could have concluded that Lacura was statutorily ineligible to claim any tip credit.

Moreover, even if Lacura *could* claim a tip credit, that would not eliminate its liability because Jackson also testified that "about half the time" she was not paid anything at all.  As explained above, employers claiming a tip credit still must directly pay their tipped employees at least $2.13 an hour.  Lacura's contention that "all the other tipped employees testified that they were paid $25 per shift" misses the mark, because the jury could have disbelieved "all the other tipped employees" and believed Jackson.  *See Lamonica*, 711 F.3d at 1312 (collecting cases and noting that, in assessing a motion for judgment as a matter of law, courts do not make credibility determinations, do not weigh the evidence, and disregard all evidence favorable to the moving party that the jury was not required to believe).

In sum, Jackson presented sufficient evidence for the jury to conclude that Lacura failed to pay her the minimum wage.

### B.  Liquidated Damages

"Any employer who violates" the minimum wage provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an

9

additional equal amount as liquidated damages." 29 U.S.C. § 216(b). But "if the employer shows to the satisfaction of the court that the act or omission giving rise to" an action to recover unpaid minimum wages under the FLSA "was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act," then "the court may, in its sound discretion, award no liquidated damages." *Id.* § 260. In conjunction, these two provisions mean that "liquidated damages are mandatory absent a showing of good faith." *Spires*, 980 F.2d at 689 (quoting *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987)). "An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Id.* (internal quotation marks omitted).

Lacura barely attempts to demonstrate good faith, opting instead to argue that its violation "cannot be willful" because Jackson "was paid more than the minimum wage." This argument is essentially a denial of liability and amounts to an attempt to relitigate the jury's verdict. Even putting to one side the fact that a good-faith finding would merely have *allowed* the district court to exercise discretion and waive liquidated damages, the district court's finding that Lacura failed to make such a showing is on firm foundation: Lacura kept no payroll records, produced no evidence that it sought or relied upon legal guidance, and did not even track how

10

much money its employees were making in tips.  In light of this, and because "[e]ven inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws," *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979),[5] the district court was correct to award liquidated damages in an amount equal to the jury's verdict.

### C. Attorneys' Fees

In an action to recover unpaid minimum wages, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  We have explained that prevailing FLSA plaintiffs are "automatically entitled to attorneys' fees," *Dale*, 498 F.3d at 1223 n.12, and the "determination of a reasonable fee pursuant to" § 216(b) "is left to the sound discretion of the trial judge and will not be set aside absent a clear abuse of discretion."  *Kreager*, 775 F.2d at 1543.

"The starting point for determining a reasonable fee award is multiplying the number of attorney hours reasonably expended by a reasonable hourly rate." *Andrews v. United States*, 122 F.3d 1367, 1375 (11th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).  Here, the district court

---

[5] Decisions of the former Fifth Circuit rendered before October 1, 1981 constitute binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

relied on submissions and affidavits from Jackson's attorneys, another FLSA case in the Northern District of Georgia, and its own knowledge and experience to conclude that Jackson's attorneys' hourly rates were reasonable. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (plaintiff can establish reasonableness of hourly rates "by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates" (emphasis omitted)).  The district court next reviewed Jackson's attorneys' declaration and time sheets and concluded that the number of hours expended—about 375—was reasonable, "especially in light of" Lacura's "obstreperous conduct and the case having gone to trial."  Finally, the district court calculated the "lodestar" figure from these figures and awarded the full amount.

"A lodestar figure that is based upon a reasonable number of hours spent on a case multiplied by a reasonable hourly rate is itself strongly presumed to be reasonable." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S. Ct. 3088, 3098 (1986).  Here, Lacura has not pointed to anything that overcomes that presumption.  On appeal, as below, Lacura does not specifically question the reasonableness of the hourly rate or the number of hours expended, but asserts generally and conclusorily that $118,894.20 is an excessive award for a case with a $6,308 jury verdict.  While Lacura intimates that the number

of hours spent was excessive in light of the scope of the litigation (a limited set of depositions, summary judgment motions, and a two-day trial), "[g]eneralized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight," *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988), and Lacura's unadorned assertion is a far cry from this Court's instruction that objections concerning hours should be "specific and 'reasonably precise,'" *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1301).

Moreover, whatever intuitive appeal Lacura's proportionality argument may have is undercut by *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686 (1986), in which the Supreme Court rejected a proportionality argument for attorneys' fees awarded under 42 U.S.C. § 1988. *Rivera*'s reasoning is arguably even stronger in FLSA cases, where the FLSA's text renders attorneys' fees mandatory. *Compare* FLSA, 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)), *with* 42 U.S.C. § 1988(b) ("[T]he court, *in its discretion, may* allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." (emphasis added)); *see also James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007) ("Fee awards . . . should not simply be proportionate to the results

13

obtained by the Plaintiff."); *Tyler v. Westway Auto. Serv. Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005) (noting that it is not uncommon for fee requests to exceed the judgment in FLSA cases).

To be sure, there is room to quibble with the district court's decision to award a fully compensatory fee here.  The fee-to-judgment ratio is large.  Additionally, the district court's statement that Jackson "was successful on all of her claims and recovered the entirety of the damages sought at the outset of her trial" overlooks the fact that two of the counts in Jackson's initial complaint—a retaliation claim and a collective action claim—did not make it to trial.  *Cf. Military Circle Pet Ctr. No. 94, Inc. v. Cobb Cty.*, 734 F. Supp. 502, 505 (N.D. Ga. 1990) (reducing fees under § 1988 where, among other factors, two claims "did not even go [to] the jury").  Even so, given the facts here—where the verdict exceeded the amount of damages Jackson requested at trial; where Lacura's cash-only policy and failure to keep records (in violation of the FLSA) required factfinding investigations by Jackson to prove that Lacura's gross sales exceeded $500,000; where Lacura's litigation conduct itself added to the time Jackson's attorneys had to spend on the case; where Lacura has lodged no specific objections (below or on appeal) to either the rates or the hours expended; and where the district court relied on the presumptively reasonable lodestar method—we find no abuse of discretion in declining to reduce the lodestar amount.

14

\*    \*    \*

We conclude that none of Lacura's challenges warrants upsetting the decision below.  Accordingly, the judgment is

**AFFIRMED.**