[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 4, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15516

_____

D. C. Docket No. 05-03315-CV-WCO-1

GENE DALE,
MARRELL WARING, et al.,

                                        Plaintiffs-Appellants,

versus

COMCAST CORPORATION,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 4, 2007)**

Before DUBINA and BLACK, Circuit Judges,  and RESTANI,[*] Judge.

BLACK, Circuit Judge:

_____

[*] Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

Plaintiffs-Appellants are Georgia residents and subscribers of defendant

Comcast Corporation (Comcast), a cable television provider.  The subscribers filed

a class action lawsuit against Comcast alleging violations of state law based on the

Cable Communications Policy Act of 1984, 47 U.S.C. § 521 *et seq.* (Cable Act).

The district court dismissed the action and compelled arbitration, finding the

subscribers had entered into binding arbitration agreements with Comcast.  After

oral argument and a careful review of the record, we find the arbitration

agreements unenforceable and reverse and remand to the district court for further

proceedings.

## I.  BACKGROUND

The Cable Act authorizes local governments to charge cable operators a

franchise fee for the use of public rights-of-way, provided the fee does not exceed

five percent of the cable operator's gross revenue.  47 U.S.C. § 542(a), (b).  The

Act permits cable operators, in turn, to pass the franchise fees through to their

subscribers*.  See id.* § 542(c).  The Act also requires cable operators to "pass

through . . . the amount of any decrease in a franchise fee."  *Id.* § 542(e).

The subscribers allege Comcast calculates its "pass-through" franchise fees

by using estimates of future revenue from advertising sales and home-shopping

channel commissions.  The subscribers contend that by using these estimates,

Comcast charges its customers more than it actually pays in franchise fees based on actual revenues, in violation of 47 U.S.C. § 542. They claim Comcast retains the excess franchise fees even though they never consented to Comcast's estimated calculation of the "pass through" fees or to its retention of the excess fees.

On December 12, 2005, Dale, as class action representative, filed a complaint in state court asserting claims of "unjust enrichment" and "money had and received." The class seeks an accounting of funds wrongfully withheld, repayment of excess franchise fees, and declaratory and injunctive relief. Comcast removed the action to federal court and filed a motion to compel arbitration and dismiss, arguing the subscribers' individual claims were governed by written arbitration agreements.

In its motion, Comcast argued that each subscriber received its 2004 "Policies and Procedures," an annual notice containing a mandatory arbitration provision, with his or her December invoice or in a welcome kit given to each new subscriber at the time of service installation. The arbitration section in the notice, titled "Mandatory & Binding Arbitration" (the Arbitration Provision), provides that either the subscriber or Comcast may elect to arbitrate a dispute rather than litigate the dispute in court. The Arbitration Provision also contains a class action

3

waiver clause prohibiting subscribers from bringing claims on a class action or consolidated basis. The waiver states:

> All parties to the arbitration must be individually named. There shall be no right or authority for any claims to be arbitrated or litigated on a class-action or consolidated basis or on basis [sic] involving claims brought in a purported representative capacity on behalf of the general public (such as a private attorney general), other subscribers, or other persons similarly situated.

Comcast argued the subscribers accepted the Arbitration Provision, including the class action waiver, by their continued subscription to Comcast's services after receiving the notices.

In response to Comcast's motion to compel arbitration and dismiss, the subscribers disputed having received the 2004 "Policies and Procedures" or having agreed to the Arbitration Provision, and they requested a jury trial on the issue of whether they each had entered into an arbitration agreement with Comcast. They also argued that, even if the Arbitration Provision constituted an agreement to arbitrate, the class action waiver was unconscionable and therefore unenforceable as a matter of law.

On September 19, 2006, the district court granted Comcast's motion to compel arbitration and dismiss and denied the subscribers' request for a jury trial. The court found the Arbitration Provision was binding and the class action waiver

4

was not unconscionable.  The subscribers timely appealed arguing, *inter alia*, the district court erred in failing to find the class action waiver unconscionable and in granting Comcast's motion to compel arbitration and dismiss.[1]  We find merit in the subscribers' arguments and reverse and remand to the district court for further proceedings.

## II.  DISCUSSION

We review the district court's grant of Comcast's motion to compel arbitration and dismiss *de novo.  Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 n.6 (11th Cir. 2005).  The issue presented is whether the Arbitration Provision's class action waiver is unconscionable under Georgia law and thus unenforceable as a matter of law.[2]  If it is, then pursuant to the Arbitration

---

[1] The subscribers also argue on appeal the district court erred in denying their request for a jury trial on the issue of whether each subscriber entered into an arbitration agreement with Comcast.  Because we conclude the class action waiver clause is unenforceable, and thus the Arbitration Provision in its entirety is unenforceable, *see infra*, we need not address whether the district court erred in denying the subscribers' request for a jury trial.  For purposes of this discussion, however, we assume without deciding that the Arbitration Provision constitutes an agreement between each subscriber and Comcast.

[2] We note that because the subscribers' unconscionability argument places in issue the enforceability of the Arbitration Provision itself, we may decide the issue.  *See Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002) (citing *Prima Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801 (1967)).  We look to state law to determine whether a provision in a contract is unenforceable.  *Id.* at 1306-07.

Provision's severability clause, the entire Arbitration Provision is unenforceable, and the subscribers can maintain their action in federal court.[3]

Under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (FAA), written agreements to arbitrate a dispute arising out of a transaction involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. "The FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically." *Bess v. Check Express*, 294 F.3d 1298, 1306 (11th Cir. 2002). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87, 116 S. Ct. 1652, 1656 (1996).

Here, the subscribers argue Comcast's class action waiver is unenforceable as a matter of law because it is unconscionable under applicable Georgia law. "[T]he basic test for determining unconscionability is 'whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the

---

[3] The severability clause in the Arbitration Provision states: "In the class action waiver clause is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable."

6

circumstances existing at the time of the making of the contract.'" *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 771 (Ga. 1996) (quoting U.C.C. §2-302 cmt. 1).[4] Georgia law recognizes both procedural and substantive unconscionability. *Id.* "Procedural unconscionability addresses the process of making [a] contract, while substantive unconscionability looks to the contractual terms themselves." *Id.* To determine substantive unconscionability, courts focus on "matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.* at 772.

The subscribers argue Comcast's class action waiver is substantively unconscionable.[5] They claim both the United States Supreme Court and this Court have recognized that public policy supports the need for class actions for certain types of claims. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the

---

[4] Georgia courts also define an unconscionable contract as "such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of." *Hall v. Fruehauf Corp.*, 346 S.E.2d 582, 583 (Ga. Ct. App. 1986) (internal quotation omitted).

[5] The subscribers also argue on appeal that the class action waiver is procedurally unconscionable. We do not address this argument since we conclude *infra* that the clause is substantively unconscionable and thus unenforceable as a matter of law.

incentive for any individual to bring a solo action prosecuting his or her rights."
(internal quotation omitted)); *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir.
1989) ("[T]he effort and cost of investigating and initiating a claim may be
greater than many claimants' individual stake in the outcome, discouraging the
prosecution of these claims absent a class action filing procedure."). The
subscribers argue that if Comcast's class action waiver is held valid, they will
effectively be denied any remedy. If successful on their claims, the subscribers
individually stand to recover a very small amount. For example, the subscribers
contend that in Fulton County, during January, February, and March 2005,
Comcast charged its subscribers $629,000 in franchise fees, but paid only
$590,000 to the local government. This resulted in a total overcharge of $39,000
or $0.66 per subscriber (that is, $39,000 divided by an estimated 58,900 Fulton
County subscribers). Over the applicable four-year statute of limitations period,
the subscribers estimate Comcast charged them $10.56 each in excess fees (that is,
$0.66 each three-month period for four years).

The subscribers also explain that even though the Arbitration Provision
requires Comcast to advance arbitration filing fees and the arbitrator's cost and
expenses upon written request, it holds the subscribers responsible for additional
costs, including fees for attorneys and expert witnesses. Comcast will only pay

8

those fees and costs which it is required to pay by law. If Comcast prevails, the Arbitration Provision further requires the subscribers to reimburse Comcast for advanced fees up to the amount the subscribers would have paid to file the claim in state court.[6] The subscribers maintain that, given the potential recovery when compared to the cost of arbitration, a single plaintiff would not proceed to arbitration. Accordingly, the subscribers argue the class action waiver is unconscionable as it will allow Comcast to continue unabated its alleged practice of overcharging customers.

Comcast responds that our decision in *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005), disposes of the subscribers' substantive unconscionability argument. In *Caley*, we considered, *inter alia*, whether Gulfstream's dispute resolution policy (DRP), which required its employees to submit certain employment-related claims to arbitration, was unconscionable under Georgia law. *Id.* at 1377-79. The plaintiffs claimed the DRP was substantively unconscionable for several reasons, including that it limited discovery and prohibited class actions. The Court's discussion of this argument was rather brief. We stated:

---

[6] In Fulton County, Geogia, a plaintiff must pay $117.50 to file a complaint against a single defendant and an additional $25.00 marshall service fee. *See* http://www.georgiacourts.org/courts/fulton/fees.html.

9

As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition, characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims. The DRP's prohibition of class actions and discovery limitations are consistent with the goals of simplicity, informality and expedition touted by the Supreme Court . . . .

*Id.* at 1378 (internal quotations, citations, and footnote omitted).

We do not agree with Comcast that *Caley* requires us to conclude the class action waiver is enforceable. In *Caley,* we determined only that under the specific facts of that case, the DRP prohibiting class actions was enforceable, not that every class action waiver is enforceable under Georgia law.[7] We did not consider a factual scenario in which a remedy was effectively foreclosed because of the

---

[7] *Caley* relied on *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 1654 (1991), to conclude Gulfstream's DRP was enforceable. The question presented in *Gilmer* was "whether a claim under the Age Discrimination in Employment Act of 1967 (ADEA) can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application." 500 U.S. at 23, 111 S. Ct. at 1650 (citations omitted). *Gilmer* involved a single plaintiff who argued his ADEA claim should not be subject to compulsory arbitration because it "would be inconsistent with the statutory framework and purposes of the ADEA." *Id.* at 27, 111 S. Ct. at 1652. The Court briefly addressed the plaintiff's argument that an arbitration agreement's failure to provide for class actions would offend the ADEA. *Id.* at 32, 111 S. Ct. 1655. The Court noted that the agreement *did* provide for collective proceedings and that "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred. . . . [I]t should be remembered that arbitration agreements will not preclude the *EEOC* from bring actions seeking class-wide . . . relief." *Id.* (alteration and emphasis in original) (internal quotations and citation omitted). Thus, although the Court determined the denial of class action relief for ADEA arbitral claims did not offend the statutory framework and purposes of the ADEA, its discussion did not extend further.

10

negligible amount of recovery when compared to the cost of bringing an arbitration action. More importantly, a review of the claims in *Caley* shows that each provided for the recovery of attorneys' fees and/or expert costs should the plaintiff prevail.[8]

We recognize that in at least two other cases, we have found arbitration agreements precluding class action relief to be valid and enforceable. *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005); *Randolph v. Green Tree Fin. Corp.–Ala.*, 244 F.3d 814, 819 (11th Cir. 2001). Like *Caley*, however, both *Jenkins* and *Randolph* involved claims for which attorneys' fees and other costs were recoverable. For example, in *Jenkins*, the plaintiff filed a class action lawsuit, alleging that certain "payday" loan agreements violated Georgia's usury statutes and the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act.[9] 400 F.3d at 872-73. Each time the plaintiff obtained a "payday" loan, she signed an arbitration agreement, in

---

[8] In *Caley*, the plaintiffs alleged various discrimination and other claims under the Fair Labor Standards Act (FLSA), the Age Discrimination in Employment Act (ADEA), the Employee Retirement Security Act (ERISA), and Title VII. 428 F.3d at 1364. Each of these Acts provides for the recovery of attorneys' fees and litigation costs. *See* 29 U.S.C. § 216(b) (FLSA); 29 U.S.C. § 626(b) (ADEA) (incorporating the award of attorneys' fees and costs under 20 U.S.C. § 216(b)); 29 U.S.C. § 1132(g)(1) (ERISA); 42 U.S.C. § 2000e-5(k) (Title VII).

[9] "Payday loans" are generally small-dollar, short-term, high interest loans secured by a check given to the payday lender in the amount of the cash advance plus interest. *Jenkins*, 400 F.3d at 871. If the borrower has not repaid the lender by the due date, the lender can negotiate the check. *Id.*

11

which she agreed to either arbitrate claims or assert them in a small claims tribunal and to waive class action relief.  *Id.* at 870.  The district court determined the arbitration agreements were substantively unconscionable because they precluded borrowers from either instigating or participating in class action suits.  *Id.* at 877.  The court explained that "[a] class action is the only way that borrowers with claims as small as the individual loan transactions [at issue in this case] can obtain relief," and speculated that a borrower who attempts to pursue a single claim would "probably" be unable to find affordable representation.  *Id.* (internal quotation omitted).

On appeal, however, we determined the class action waiver was not unconscionable.  In rejecting the district court's conclusion, we noted that we had previously held in *Randolph* that "a contractual provision to arbitrate [Truth-In-Lending-Act (TILA)] claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA."[10]  *Id*.

---

[10]  In *Randolph*, we addressed "whether an arbitration agreement that bars pursuit of classwide relief for TILA violations is unenforceable for that reason."  *Randolph*, 244 F.3d at 816.  The opinion did not discuss whether the class action waiver was *unconscionable*, but instead whether it was inconsistent with the statutory text and legislative history of TILA.  *See id.* at 816-19.  We specifically noted, however, that "the public policy goals of TILA can be vindicated through arbitration, and the statute contains other incentives–statutory damages and attorneys fees–for bringing TILA claims."  *Id.* at 818; *see also* 15 U.S.C. § 1640(a)(3) (stating that "in the case of any successful action," a plaintiff is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court").

at 877-78 (internal quotation omitted). We also found the district court's contention that consumers would likely be unable to obtain legal representation without the class action vehicle to be unfounded because under Georgia's RICO Act, the plaintiff could recover attorneys' fees and costs if she prevailed.[11] *Id.* at 878. We stated that "when the opportunity to recover attorneys' fees is available, lawyers will be willing to represent . . . debtors in arbitration." *Id.* (citing *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) and *Johnson v. West Suburban Bank*, 225 F.3d 366, 374 (3d Cir. 2000)). We therefore concluded that "precluding class action relief [would] not have the practical effect of immunizing [the defendants]" and "the inclusion of a class action waiver in the [a]rbitration [a]greements did not render those [a]greements substantively unconscionable." *Id.*

Here, unlike the plaintiffs in *Caley*, *Jenkins*, and *Randolph,* the subscribers cannot recover attorneys' fees under the Cable Act for the specific violations alleged. While the Cable Act provides for attorneys' fees and costs for violations

---

[11] The Georgia Rico Act provides that "[a]ny person who is injured by reason of any violation of [the Georgia Rico Act] shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages. Such person shall also recover attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred. The defendant or any injured person may demand a trial by jury in any civil action brought pursuant to this Code section." O.C.G.A. § 16-14-6(c).

of 47 U.S.C. § 551 (Protection of Subscriber Policy) and § 553 (Unauthorized Reception of Cable Service), it does not provide for attorneys' fees and costs for a violation of § 542 (Franchise Fees). We recognize that the subscribers assert state law claims and, under state law, the subscribers may be able to recover fees and costs. Georgia law provides that "[t]he expenses of litigation generally shall not be allowed as part of the damages," but a jury may award such expenses "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. Nonetheless, the potential recovery of attorneys' fees and litigation costs under O.C.G.A. § 13-6-11 does not provide the same incentive for an attorney to represent an individual plaintiff as the automatic, or likely, award of fees and costs available to a prevailing plaintiff for the claims asserted in *Caley*, *Jenkins*, and *Randolph*.[12] We

---

[12] The plaintiffs in *Caley* asserted claims under the FLSA, ADEA, Title VII, and ERISA. Prevailing plaintiffs are automatically entitled to attorneys' fees and costs under the FLSA and ADEA. *See* 29 U.S.C. § 216(b) (FLSA) (stating that the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis added); 29 U.S.C. § 626(b) (ADEA) (incorporating the award of attorneys' fees and costs under 20 U.S.C. § 216(b)). Under Title VII and ERISA, a court may, in its discretion, award attorneys' fees and costs to a prevailing plaintiff. *See* 42 U.S.C. § 2000e-5(k) (Title VII) (stating that the "court, in its discretion, *may* allow the prevailing party . . . a reasonable attorney's fee (including expert fees)") (emphasis added); 29 U.S.C. § 1132(g)(1) (ERISA) (stating that the "court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party") (emphasis added). The Georgia RICO statute (*Jenkins*) and TILA (*Randolph*) both provide for the automatic award of attorneys' fees and costs to a prevailing plaintiff. *See* O.C.G.A. § 16-14-6(c) (stating that a prevailing

14

thus find ourselves in unchartered territory and look to our sister circuits'

decisions addressing the enforceability of class action waivers.

In a recent case, *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), the

First Circuit addressed the enforceability of arbitration agreements invoked by

Comcast against a group of Boston subscribers suing Comcast for violations of

state and federal antitrust law. *Id.* at 29. The Boston subscribers argued the

arbitration agreement prevented them from vindicating their statutory rights by,

among other things, prohibiting the use of the class mechanism. *Id.* at 37. In

deciding whether the class action waiver was valid, the First Circuit first noted

that "the legitimacy of the arbitral forum rests on the presumption that arbitration

provides a fair and adequate mechanism for enforcing statutory rights." *Id.* at 54

(internal quotation omitted). Relying on unopposed expert evidence presented by

the plaintiffs, the court found that the bar on class arbitration threatens this

presumption given the "complexity of an antitrust case generally, and the

complexity and cost required to prosecute a case against Comcast specifically."

*Id.* at 58. "[W]ithout some form of class mechanism–be it class action or class

---

plaintiff "*shall* also recover attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred") (emphasis added); 15 U.S.C. § 1640(a)(3) (stating that "[e]xcept as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under [TILA] . . . with respect to any person *is liable* to such person . . . [for] the costs of the action, together with a reasonable attorney's fee as determined by the court") (emphasis added).

arbitration–a consumer antitrust plaintiff will not sue at all." *Id.* at 58.[13]

Accordingly, the court struck down the class arbitration waiver, concluding that

"Comcast [would] be essentially shielded from private consumer antitrust

enforcement liability, even in cases where it has violated the law." *Id.* at 61.[14]

"Plaintiffs [would] be unable to vindicate their statutory rights [and] the social

goals of federal and state antitrust laws [would] be frustrated because of the

'enforcement gap' created by the de facto liability shield." *Id.* at 61.[15]

While the subscribers in the instant case do not argue the class action waiver

prevents them from vindicating their statutory rights, we nonetheless find the First

Circuit's analysis in *Kristian* instructive. Without the benefit of a class action

mechanism, the subscribers would effectively be precluded from suing Comcast

---

[13] The court also rejected the contention that the availability of attorneys' fees provides the necessary incentive for private enforcement actions. *Id.* It explained that an attorney's initial outlay in time and money would be larger than an individual plaintiff's potential recovery, and after factoring the uncertainty of the plaintiff prevailing, the likelihood of an individual claim "shrinks even further." *Id.* at 59.

[14] *But see Iberia Credit Bureau Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004) (finding a class action waiver enforceable despite its potential to immunize defendants from low-value claims, but emphasizing that the Louisiana Unfair Trade Practices Act's (LUTPA) prohibition of class actions was a "highly relevant factor in considering the equities of the arbitration clauses").

[15] While the court found the class arbitration provision unenforceable, it applied the savings clause of the arbitration agreements to sever that provision from the agreement. *Id*. at 62, 64. With the provision severed, the court permitted arbitration of the arbitration claims to proceed. *Id.* at 64.

for a violation of 47 U.S.C. § 542. The cost of vindicating an individual subscriber's claim, when compared to his or her potential recovery, is too great. Additionally, because the Cable Act does not provide for the recovery of attorneys' fees or related costs for the violations alleged by the subscribers, and because state law allows fees and costs to be awarded only where bad faith is shown, it will be difficult for a single subscriber to obtain representation. This will allow Comcast to engage in unchecked market behavior that may be unlawful. Corporations should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims.

We thus conclude that the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances. Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns.

17

## III. CONCLUSION

Here, based on the totality of circumstances, we conclude the Comcast class action waiver is unconscionable to the extent it prohibits the subscribers from bringing a class action alleging state law claims based on a violation of the Cable Act's franchise fee provisions, 47 U.S.C. § 542. Because the class action waiver cannot be severed from the Agreement, the entire arbitration provision is rendered unenforceable. We reverse and remand to the district court for further proceedings.

**REVERSED AND REMANDED.**