**Faith GORDON, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**BRANCH BANKING AND TRUST COMPANY, Defendant.**

Civil Action No. 1:09–CV–1744–CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 2, 2009.

Edward Adam Webb, G. Franklin Lemond, Jr., The Webb Law Group, LLC, Atlanta, GA, for Plaintiff.

Constance Melissa Ewing, Nancy H. Baughan, William J. Holley, II, Parker Hudson Rainer & Dobbs, Atlanta, GA, for Defendant.

### *ORDER*

CHARLES A. PANNELL, JR., District Judge.

This matter is now before the court on the defendant's motion to compel arbitra-

tion and motion to dismiss [Doc. No. 7]; on the defendant's motion to stay discovery and pre-trial deadlines [Doc. No. 9]; and on the plaintiff's motion to strike affidavit [Doc. No. 15].

## I. *Case Overview*

On May 22, 2009, plaintiff Faith Gordon filed a class action complaint in the Superior Court of Fulton County [Doc. No. 1, Ex. B]. In her complaint, she alleges that she maintains a checking account with defendant Branch Banking and Trust Company ("BB & T"). She claims that although she and other customers rely on BB & T to ensure that charges are posted to customers' accounts in a commercially reasonable and good faith manner, BB & T in practice assesses charges in an unfair manner that is harmful to the interests of the customer. Specifically, she contends that BB & T "routinely enforces a policy whereby charges incurred are posted to consumers' accounts in order of largest to smallest amounts, even when larger charges occur days after smaller charges." *Id.* at ¶ 10. She also contends that BB & T assesses overdraft fees even at times when the actual funds in the customer's account are sufficient to cover all debits that have been submitted to the bank for payment. She alleges that BB & T engages in this practice to increase the number and total amount of service fees imposed upon customer accounts. She contends that even if she was given materials containing language that could possibly be interpreted to authorize or disclose BB & T's practices as described above, any such notice or authorization was inadequate and ineffective. Furthermore, she contends that BB & T's reservation of discretion to reorder transactions and assess overdraft fees is constrained by its obligation to deal fairly and in good faith. Gordon argues that as a result of improper overdraft fees, BB & T has improperly deprived her of significant funds. Based on these allegations, Gordon asserts claims against BB & T for breach of contract, conversion, unconscionability, and unjust enrichment.

Gordon filed her complaint not only on her own behalf, but also on behalf of all BB & T account holders "who incurred an overdraft charge despite their account having a sufficient balance of actual funds to cover all debits that have been submitted to the bank for payment." *Id.* at ¶ 15. In addition, she filed her complaint on behalf of "all BB & T account holders who incurred one or more overdraft charges based on BB & T's reordering of charges." *Id.* She claims that all injuries sustained by any member of the class arise out of the conduct of BB & T in wrongfully charging overdraft fees to their accounts.

For relief, Gordon seeks certification of this matter as a class action, restitution, other damages, reasonable costs and attorneys' fees, trial by jury, and any other relief that the court deems just and equitable.

On June 29, 2009, BB & T removed the case to this court [Doc. No. 1]. Shortly thereafter, BB & T filed its answer [ Doc. No. 5] and the pending motion to compel arbitration and motion to dismiss [Doc. No. 7]. On July 29, 2009, BB & T filed its motion to stay discovery and pre-trial deadlines [Doc. No. 9]. On August 11, 2009, Gordon filed her motion to strike [Doc. No. 15].

## II. *Motion to Compel Arbitration and Motion to Dismiss [Doc. No. 7]*

In its motion to compel arbitration, BB & T claims that when Gordon established her account with BB & T, she acknowledged and agreed to a comprehensive arbitration agreement that, among other things, allows Gordon or BB & T to elect binding arbitration of any dispute or claim relating in any way to Gordon's account. BB & T claims that it has elected to

arbitrate Gordon's claims in binding arbitration. Accordingly, it argues that the court should direct the parties to comply with their contractual arbitration agreement and dismiss the complaint.

In response, Gordon contends that the arbitration provision contained within BB & T's bank services agreement is unenforceable because the class action waiver contained in the provision is substantively unconscionable under Georgia law.[1] Gordon points out that BB & T charges its customers a $35 fee per overdraft and states that she and the other members of the proposed class individually stand to recover only a small amount of money if they are successful. She states that BB & T does not advance the arbitration filing fees or the cost of arbitration to customers. In addition, she argues that—under the terms of the bank services agreement—the arbitrator has the discretion to require customers engaged in arbitration to reimburse BB & T for its expenses and attorneys' fees. She argues that when the negligible amount of recovery per individual plaintiff is compared to the cost and risk of bringing an arbitration action, a single, sane plaintiff would never proceed to arbitration. Accordingly, she contends that the class action waiver is unconscionable because it would allow BB & T to continue

unabated in its practice of assessing overdraft charges in bad faith.

In making her arguments, Gordon clarifies that her claims do not guarantee the recovery of attorneys' fees or related costs. She concedes that she may be able to recover fees and costs under O.C.G.A. § 13–6–11, but she argues that this statute allows fees and costs to be awarded only in extraordinary circumstances. Thus, she contends that O.C.G.A. § 13–6–11 does not provide a real incentive for an attorney to represent an individual plaintiff in her circumstance. She contends that a BB & T customer who attempts to pursue a single claim like hers will be unable to find affordable representation. Thus, she argues that a class action is the only way that BB & T customers with claims as small as the overdraft charges at issue can obtain relief.[2]

In reply, BB & T argues that the arbitration agreement and the class action waiver are enforceable. First, BB & T argues that Gordon accrued damages sufficient to warrant individual arbitration. It contends that Gordon has overdrawn her account on 59 separate occasions during an eleven-month period, resulting in overdraft fees totaling $2,285.00. It also contends

---

1. The arbitration provision, as cited by BB & T, states,

> If any portion of this arbitration provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this arbitration provision or Agreement; provided, however, if the limitations on class action are struck in a proceeding brought on a class, representative, or private attorney general basis, without impairing the right to appeal such decision, this entire arbitration provision (other than this proviso) shall be null and void in such proceeding.

BB & T's Mot. to Compel Arbitration at p. 5 [Doc. No. 7]. On the basis of this provision, Gordon contends that the entire arbitration provision is unenforceable if the class action

waiver contained in the provision is unenforceable. BB & T does not dispute Gordon's interpretation; accordingly, the court adopts it.

2. In addition to her unconscionability argument, Gordon contends that BB & T's arbitration clause is invalid because: (1) the waiver of a right to a jury trial within the agreement renders it invalid under Georgia law; and (2) the arbitration agreement seeks to compel arbitration arising out of a consumer transaction. BB & T responds to these arguments, claiming that they are devoid of merit. Because the court resolves this motion on the unconscionability analysis alone, it finds it unnecessary to discuss these contentions in greater detail.

that Gordon is seeking interest, attorneys' fees, and punitive damages.

Next, BB & T contends that arbitration is a cost-efficient option for Gordon. BB & T argues that the parties' agreement incorporates the American Arbitration Association's ("AAA's") Commercial Arbitration Rules and Supplemental Procedures for Consumer–Related Disputes. It contends that these rules limit Gordon's arbitration costs and shifts the burden of arbitration to BB & T. BB & T contends that as long as Gordon seeks $10,000 or less, her arbitration fees will not exceed $125.[3] BB & T contends that arbitration is a bargain for Gordon compared to the $350 filing fee for civil litigation in this court.

BB & T further argues that, pursuant to the arbitration agreement and the rules of the AAA, Gordon may recover her attorneys' fees in arbitration. BB & T contends that the arbitrator has unfettered discretion to award "fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate." Reply Br. at p. 5 (citing Commercial Arbitration Rules, R–43(c)). BB & T clarifies that this includes the award of attorneys' fees in this case. BB & T also contends that Gordon is highly likely to recover attorneys' fees under O.C.G.A. § 13–6–11 if she is successful on her conversion claim because bad faith will be presumed. BB & T contends that, based on the particular facts of this case, Gordon's procedural opportunities for recovering attorneys' fees are significantly better in arbitration than in court.

Next, BB & T argues that the facts of this case are distinguishable from those cases in which the courts in this circuit have invalidated arbitration provisions. It also points out that several of the cases that Gordon cites do not apply Georgia law. Finally, BB & T concludes by requesting an oral argument on the motion to compel arbitration.

### A. *Legal Standard*

■ The Federal Arbitration Act dictates that binding arbitration clauses in written agreements are enforceable in federal court. *See Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir.2007). However, such a clause may be invalidated under any applicable state law that governs contracts generally, including "fraud, duress, or unconscionability." *Id.* Here, Gordon argues that the arbitration clause and class action waiver in the bank agreement are unenforceable because the waiver is substantively unconscionable under Georgia law.

Under Georgia law,

[t]he basic test for determining unconscionability is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Georgia law recognizes both procedural and substantive unconscionability. Procedural unconscionability addresses the process of making a contract, while substantive unconscionability looks to the contractual terms themselves. To determine substantive unconscionability, courts focus on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.

*Dale*, 498 F.3d at 1219 (internal citations and punctuation omitted).

---

**3.** BB & T contends that it is responsible for the AAA administrative fees totaling $750, a $200 service fee if a hearing is held, and arbitrator compensation in the amount of $750 per day.

In *Dale*, a case applying Georgia law, the Eleventh Circuit concluded that "the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances." *Dale*, 498 F.3d at 1224. It went on to list several examples of relevant circumstances, including

> the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorney's fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns.

*Id.* at 1224.

In *Dale*, the Eleventh Circuit concluded that the consumer arbitration agreement drafted by defendant Comcast Corporation was substantively unconscionable because it contained a non-severable class action waiver. 498 F.3d at 1224. The court concluded that without the benefit of a class action mechanism, Comcast subscribers would effectively be precluded from suing Comcast in regard to allegedly excess franchise fees levied upon them. *Id.* Although the total amount in controversy in the case was substantial, the subscribers estimated that they stood to individually recover $10.56 in actual damages. *Id.* at 1220. Although the arbitration agreement required Comcast to advance arbitration filing fees and the arbitrator's costs and expenses upon written request, it held the subscribers responsible for additional costs, including fees for attorneys and expert witnesses. *Id.* Moreover, if Comcast prevailed, the arbitration agreement re-

quired the subscribers to reimburse Comcast for advanced fees up to the amount the subscribers would have paid to file the claim in state court. *Id.* After considering these facts, the court found that "the cost of vindicating an individual subscriber's claim, when compared to his or her potential recovery, is too great." *Id.* at 1224. Additionally, the court found that it would be difficult for a single subscriber to find representation for his or her claims because the act sued under did not provide for the recovery of attorneys' fees or related costs for the violations alleged by Comcast subscribers. *Id.* The court recognized that the subscribers had asserted claims under Georgia law, which made the recovery of attorneys' fees and costs possible under O.C.G.A. § 13–6–11. *Id.* However, the court concluded that O.C.G.A. § 13–6–11 did not give attorneys adequate incentive to represent an individual plaintiff in the action at hand because it allowed fees or related costs to be awarded only where bad faith is shown. *Id.* at 1223 and 1224. The court concluded that under these circumstances, Comcast would be able to engage in unchecked market behavior that may be unlawful. *Id.* at 1224. Accordingly, it concluded that the class action waiver, and thereby the entire arbitration provision, was unconscionable and unenforceable. *Id.* at 1224.

### B. *Analysis & Conclusion*

█ The court concludes that the class action waiver in this case, as in *Dale*, is substantively unconscionable. As discussed at length above, this case is a consumer action addressing BB & T's alleged practice of improperly maximizing overdraft fees. Although BB & T alleges that Gordon has incurred overdraft fees totaling $2,285 [4]—an amount BB & T contends

---

4. In her motion to strike declaration [Doc. No. 15], Gordon appears to contend that this      figure is overblown.

is sufficient to maintain an independent action—she purports to bring this action on behalf of herself and all other BB & T account holders to whom BB & T has improperly assessed overdraft fees. *See* Compl. at ¶ 15. It is undisputed that each overdraft fee is only $35. The court concludes that when compared to the potential recovery, the cost of engaging in arbitration or litigation on an individual basis to recover overdraft fees is simply too great to justify the instigation of an action by the individual consumer. As conceded by Comcast, under the terms of the agreement, each customer raising a claim could have to pay as much as $125 in arbitration fees. Moreover, to effectively arbitrate or litigate a dispute, a customer would need to retain an attorney. However, as was the case in *Dale*, no attorney would have the incentive to represent a customer in a dispute over the overdraft fees because the damages recoverable would not justify his or her fees. Moreover, none of the statutes sued under guarantee the payment of attorneys' fees to the prevailing customer, further undercutting an attorney's incentive to take such a low-value case. BB & T contends that attorneys would have the incentive to represent customers in these suits because of the availability of attorneys' fees pursuant to O.C.G.A. § 13–6–11 and the arbitration agreement. However, this court must follow *Dale* and conclude that the availability of attorneys' fees pursuant to O.C.G.A. § 13–6–11 does not provide an adequate incentive for an attorney to take a case such as the one at hand on

an individual basis.[5] Moreover, the court cannot conclude that the vague, highly discretionary language allowing attorneys' fees in the arbitration agreement provides attorneys with any additional incentive to represent a plaintiff in the present action. To the contrary, the court concludes that such a provision could actually act as a deterrent to an attorney taking such a case because it opens the door for the arbitrator to require the customer to pay BB & T's attorneys' fees if the customer is unsuccessful.

In light of the circumstances at hand, the court concludes that the class action waiver contained in the arbitration agreement is substantively unconscionable and unenforceable. Thus, as discussed more fully in footnote 1, this court concludes that the entire arbitration agreement is unenforceable. Accordingly, the court denies BB & T's motion to compel arbitration and motion to dismiss [Doc. No. 7]. In making this ruling, the court notes that BB & T has requested a hearing on this matter. However, after reviewing the parties' briefs, the court concludes that a hearing is unnecessary.

### III. *Gordon's Motion to Strike Declaration [Doc. No. 15]*

In her motion, Gordon moves to strike the declaration of Jennifer M. Corn because she claims that it goes beyond merely responding to arguments raised by Gordon in her response brief and because it contains misleading information. In the

---

**5.** The court is not persuaded that Gordon's conversion claim makes this a case in which the recovery of attorneys' fees is so likely that an attorney would have the incentive to represent a customer. Although conversion is an intentional tort that "invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorneys' fees pursuant to O.C.G.A. § 13–6–11," "the language authorizing fees and expenses in O.C.G.A. § 13–6–11 is permissive, thereby

giving the fact-finder discretion as to whether to award attorneys fees and expenses."

*Honig v. Comcast of Georgia I, LLC,* 537 F.Supp.2d 1277, 1288 n. 1 (N.D.Ga.2008). The court concludes that the possibility of attorneys' fees under O.C.G.A. § 13–6–11, although certainly more likely when an intentional tort is involved, is still not enough of an incentive for an attorney to undertake representation of a case like the one at hand.

alternative, Gordon requests the opportunity to file a sur-reply to further address the new factual allegations. Because the court has already ruled on the motion to compel arbitration, the court concludes that this motion is now moot. Accordingly, it is denied [Doc. No. 15].

### IV. *BB & T's Motion to Stay Discovery [Doc. No. 9]*

In its motion, BB & T requests that this court stay discovery and pre-trial deadlines. BB & T argues that discovery should not occur in this court because Gordon contractually agreed to arbitrate her claims before the AAA. BB & T also contends that Gordon has taken steps to have this action proceed in a Multidistrict Litigation ("MDL") pending in Florida. Accordingly, it asks this court to stay this proceeding until it is determined where and pursuant to what rules Gordon may pursue her claims. If the court does not grant the motion to stay, BB & T requests that the court hold a scheduling conference to discuss how and to what extent discovery should proceed. As with its motion to compel arbitration, BB & T requests that the court hear oral argument on this motion.

As discussed above, this court has denied the motion to compel arbitration. Thus, the one remaining ground for BB & T's motion to stay is Gordon's request to have this case proceed to MDL. BB & T contends that if the case is transferred to MDL, the discovery schedule and limits will be determined by Judge King in the Southern District of Florida. It contends that the efficiencies intended by coordinated pleadings in MDL will not be served by proceeding separately in this court.

After reviewing BB & T's filings, the court concludes that the issues are clear and that no oral argument is necessary on this motion. Accordingly, the court denies BB & T's motion to stay

forthwith [Doc. No. 9]. Although BB & T claims that a stay is appropriate because this case may be transferred to MDL, BB & T itself concedes that it has opposed such a transfer. This court will not allow this case to sit dormant until that issue is resolved. The court has noted that BB & T has requested a scheduling conference to discuss the timing and sequence of discovery. If BB & T still requests such a conference, it is instructed to confer with Gordon and submit a joint agenda setting forth the issues to be addressed at the scheduling conference and each parties' positions in respect to those issues. This agenda should be filed with the court no later than October 15, 2009. This joint agenda should propose a schedule for the discovery in this case. The court will determine after reviewing this joint agenda whether a scheduling conference is necessary.

### V. *Summary*

For the reasons stated above, this court denies BB & T's motion to compel arbitration and motion to dismiss [Doc. No. 7]; denies BB & T's motion to stay discovery and pre-trial deadlines [Doc. No. 9]; and denies as moot Gordon's motion to strike affidavit [Doc. No. 15]. BB & T is instructed to submit a joint agenda setting forth the issues to be addressed at its proposed scheduling conference no later than October 15, 2009. This joint agenda should propose a schedule for the discovery in this case.