[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12066
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-01397-SCJ

TYLER KASPERS,
individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

versus

COMCAST CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 16, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Tyler Kaspers, a Georgia attorney proceeding *pro se*[1], appeals the district court's order compelling arbitration of his individual claims against Comcast Corporation and its dismissal of his claims brought on behalf of a proposed class. On appeal, Kaspers argues that the district court erred in holding that the arbitration provision in his subscriber agreement, "as applied," was neither unconscionable nor violative of public policy. He further asserts that the court erroneously dismissed his class claims on the basis of a class-action waiver. After careful review, we affirm.

## I.

This six-year saga began when Kaspers obtained cable and Internet service from Comcast for his residence in Sandy Springs, Georgia. Over a seven-month period beginning in January 2009, Kaspers did not receive full cable service except for a two-week period in August 2009. Comcast technicians visited the property over ten times to attempt to resolve the issues, but to no avail. Eventually, a technician informed Kaspers that he would receive full service only if a new wire were run from Kaspers's house to the street. To do that, Comcast needed to dig a 180-foot-long trench through Kaspers's front yard. Kaspers agreed but, despite the trench, full service still was not restored.

---

[1] Because Kaspers is a licensed attorney, we do not give him the benefit of the liberal construction we normally accord *pro se* litigants. *See Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977).

2

These service issues led to billing disputes.  Because he was not receiving full service, Kaspers on numerous occasions attempted to obtain from Comcast a refund of or credit for its monthly service charges.  Kaspers also objected to Comcast's charging him a $250 service fee to dig up his front yard.  Eventually, Kaspers canceled his Comcast subscription and refused to pay the outstanding debt Comcast claimed he owed.  At some point, Comcast referred Kaspers's purported debt to a collection agency.

Comcast's subscriber agreement, which Kaspers signed when he initially obtained service, contains a binding arbitration provision.  After attempting to resolve his dispute with Comcast informally, Kaspers submitted a claim to the American Arbitration Association ("AAA") in November 2010, in accordance with the arbitration provision.  But the AAA refused to arbitrate the claim because Comcast's arbitration provision had a "material or substantial deviation" from AAA rules and protocol with respect to a clause limiting Comcast's liability for certain damages, and because Comcast did not remedy the deviation upon request. AAA also requested that Comcast remove AAA's name from the list of arbitrators in the arbitration clause, but Comcast did not do so.  Indeed, it does not appear that Comcast responded in any way to AAA or Kaspers regarding Kaspers's attempt to arbitrate his dispute.

3

## II.

Following the unsuccessful attempt to arbitrate, Kaspers filed suit against Comcast in Georgia state court. In an amended complaint, Kaspers alleged numerous claims under Georgia state law on behalf of himself and "all other customers of Comcast similarly situated." In broad terms, Kaspers sought to recover for property damage and for payments he made for service he did not receive, and he also sought declaratory and injunctive relief either invalidating the arbitration provision in Comcast's subscriber agreement or requiring Comcast to change it in certain ways (such as removing AAA from the list of arbitrators).

Comcast removed the action to the United States District Court for the Northern District of Georgia under the Class Action Fairness Act, *see* 28 U.S.C. § 1332(d), and then moved to compel arbitration of Kaspers's individual claims and stay the action pending arbitration. Kaspers opposed arbitration for several reasons, including that Comcast previously had refused to engage in arbitration and that the arbitration provision was invalid and unenforceable.

The district court granted Comcast's motion and compelled arbitration. The court concluded that the arbitration provision was valid and enforceable and that it applied to his individual claims against Comcast. The court also found that Kaspers's claims brought on behalf of a proposed class could not proceed to arbitration due to the following class-action waiver in the subscriber agreement:

4

ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED.  THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS[.]

Doc. 14–1 at 53-54.  Consequently, the court ordered Kaspers's individual claims to arbitration and stayed the action.

In July 2014, the arbitrator issued an award finding in Kaspers's favor on his claims for breach of contract and property damage.  The arbitrator awarded Kaspers $983.52 for amounts paid to Comcast for incomplete or inadequate services, $250.00 for property damage, and $200.00 for the administrative fee Kaspers previously paid for the arbitration.  After the award, which Comcast paid in full, Kaspers sought to reopen the district court proceedings—administratively closed in the interim—to proceed on his class claims.  The district court denied the motion, concluding that the class-action waiver barred him from litigating those claims.  Because Kaspers's individual claims had been resolved in arbitration, the court dismissed the action with prejudice.  Kaspers now appeals.

5

## III.

We review *de novo* a district court's order compelling arbitration and dismissing the action.  *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011).

## IV.

"The principal purpose of the [Federal Arbitration Act (FAA)] is to ensure private arbitration agreements are enforced according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1748 (2011) (internal quotation marks omitted).  Through arbitration agreements, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its dispute."  *Id.* at 1748-49 (citations omitted).  Thus, parties may agree to class-action waivers.  *See id.*

Written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Cruz*, 648 F.3d at 1210.  Therefore, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements.  *Cruz*, 648 F.3d at 1210.  However, an agreement to arbitrate cannot be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746.

6

Kaspers admits that the binding arbitration provision in the subscriber agreement appears to be valid on its face.  Through it, Kaspers and Comcast agreed to resolve various disputes in arbitration.  Kaspers does not dispute that the arbitration provision covers his individual claims against Comcast, nor does he directly challenge the arbitrator's award.  Kaspers likewise does not dispute that, in the arbitration provision, he waived his rights to proceed against Comcast on a class basis.  In other words, Kaspers does not contend that the district court failed to enforce the arbitration agreement according to its terms.

Instead, Kaspers contends, the arbitration provision "as applied" by Comcast is unconscionable and violates public policy because it is "ineffective and poses unreasonable hurdles" to resolving disputes through arbitration.  In support of that argument, Kaspers points to evidence of the following:  AAA's refusal to administer any disputes brought by Comcast customers, because Comcast's arbitration provision does not comply with its due-process protocol; Kaspers's own arduous experience in interacting with and attempting to arbitrate a dispute with Comcast; and the class-action waiver.  In light of these and other factors, Kaspers asserts, the arbitration provision is substantively unconscionable.

Under Georgia law, unconscionability is determined "under the circumstances existing at the time of the making of the contract." *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) (internal quotation marks omitted).

7

Unconscionability can be either procedural or substantive. *Id.* Procedural unconscionability concerns the process of making a contract (largely focusing on the parties and their relative bargaining power), whereas the inquiry into substantive unconscionability focuses on the contractual terms themselves. *Id.* Matters relevant to substantive unconscionability include "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.* (quotation marks omitted).

Here, the district court did not err in compelling arbitration and dismissing Kaspers's class claims in accordance with the terms of the arbitration provision in the subscriber agreement. *Cruz*, 648 F.3d at 1210. Kaspers admits that the terms of the arbitration provision, including the class-action waiver, are facially valid. And he provides no legal authority indicating that his theory of unconscionability "as applied" is a generally applicable contract defense, nor is this novel theory equivalent to the doctrine of substantive unconscionability, as he claims in his reply brief. Consequently, he has not shown a basis for invalidating the arbitration provision. *See id.*

While the inquiry into substantive unconscionability looks to the purpose and effect of the contractual terms, and in that sense looks at how the contractual terms would be applied, the analysis is still tied to the "contractual terms

8

themselves" under the circumstances existing when the contract was made. *See Dale*, 498 F.3d at 1219.

Kaspers points to numerous instances of Comcast's allegedly unreasonable and fraudulent actions in making it extraordinarily difficult for parties to resolve or arbitrate their disputes with Comcast.[2]  But however unreasonable these actions may be, Kaspers does not contend that they arise from the contractual terms themselves.  In fact, they appear to be in opposition to the terms.  Moreover, a party's resistance to arbitration alone cannot be the basis for invalidating an arbitration agreement.  Both the FAA and Georgia law provide that a party aggrieved by the failure of another to arbitrate under an agreement may apply for an order compelling arbitration in a court of competent jurisdiction.  O.C.G.A. § 9–9–6(a); 9 U.S.C. § 4.  Kaspers did not avail himself of this remedy.  In sum, the practical difficulties Kaspers faced in attempting to arbitrate his dispute with Comcast do not show that there was any defect in the formation of the arbitration provision or that the contract terms themselves were substantively unconscionable.

We are likewise unpersuaded that AAA's refusal to arbitrate claims from Comcast because of a non-compliant damages provision renders the arbitration

---

[2] Although Kaspers makes several references to "fraud" in his briefing on appeal, we take these statements as mere colorful language and do not understand him to be alleging that the subscriber agreement was invalid due to the contract defense of fraud.  In any case, we would find such a contention to be abandoned because he makes no legal argument in that respect. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014).

9

provision invalid or unenforceable.[3]   Kaspers agrees with Comcast that AAA's administrative determination is not binding on this Court, and he does not complain that application of the damages provision affected his recovery in this case.  Moreover, AAA's refusal to arbitrate claims from Comcast does not render the arbitration provision invalid, because the choice of AAA as a forum was not integral to the agreement.  *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000); *see also* 9 U.S.C. § 5 (establishing procedures for the appointment of a substitute arbitrator).  In the arbitration provision, Kaspers agreed to certain procedures for the appointment of a substitute arbitrator, including where, as here, the named arbitrator would not enforce the arbitration provision as written.

Kaspers also has not shown that the class-action waiver is invalid.  His arguments in this regard are not clear, but he appears to contend that the class-action waiver, combined with other Comcast practices already mentioned, effectively precludes subscribers from obtaining relief from Comcast.  However, the Supreme Court has specifically "rejected the argument that class arbitration was necessary to prosecute claims that might otherwise slip through the legal system."  *Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2312 (2012).  So to the extent Kaspers argues "that the arbitration agreement [is]

---

[3] Ultimately, the AAA agreed to arbitrate this dispute because it had been presented with a court order to do so.

unconscionable and unlawfully exculpatory under [state] law because it disallow[s] classwide procedures," that argument is foreclosed. *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1235-36 (11th Cir. 2012) (quoting *Concepcion,* 131 S. Ct. at 1745); *see also Cruz*, 648 F.3d at 1215. To the extent that Kaspers's challenge to the class-action waiver simply relates to the practical difficulty of pursuing arbitration with Comcast, we reject it for the same reasons stated above.

Finally, we reject Kaspers's remaining arguments. Kaspers's contention that the district court erroneously found that he lacked "standing" to pursue his class claims misunderstands the court's order. The court made no ruling about Kaspers's standing but instead found that these claims were barred by the class-action waiver.

And, because we have concluded that the class-action waiver was valid, the district court did not need to consider the requirements for class certification under Rule 23, Fed. R. Civ. P. Kaspers also claims that Comcast engaged in "legal gamesmanship" by removing the action under the Class Action Fairness Act while at the same time contesting whether Kaspers could pursue his class claims. However, he does not contend that the action did not meet the formal requirements of the Class Action Fairness Act at the time of removal or that the court lacked subject-matter jurisdiction to address and dismiss his claims. *Cf. Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) (concluding that the post-

11

removal failure of a proposed class does not deprive the district court of subject-matter jurisdiction so long as the requirements of the Class Action Fairness Act were satisfied at the time of removal).  Consequently, he has not shown a basis for reversing the district court's decision on the basis of Comcast's "gamesmanship."

## V.

In sum, Kaspers has not shown that the arbitration provision is invalid and unenforceable, and the district court did not err in enforcing the arbitration provision according to its terms by compelling arbitration and dismissing Kaspers's class claims.  *See Concepcion*, 131 S. Ct. at 1748; *Pendergast*, 691 F.3d at 1236.  Therefore, we affirm.

**AFFIRMED.**